FILED
2016 Apr-06  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ENID MITCHELL, as personal** | } | |
| **representative of the Estate of** | } | |
| **LAVELL GREEN, deceased,** | } | |
| | } | |
| **Plaintiff,** | } | **Case No.:  2:15-cv-00188-MHH** |
| | } | |
| **v.** | } | |
| | } | |
| **FAIRFIELD NURSING AND** | } | |
| **REHABILITATION CENTER, LLC** | } | |
| **et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Enid Mitchell asserts claims for negligence and wantonness against Fairfield Nursing and Rehabilitation Center, LLC and several related entities and individuals.  Ms. Mitchell brings her claims as the representative of the estate of Mr. Lavell Green, who died at the nursing center in January 2013.   In her complaint, Ms. Mitchell contends that the defendants caused Mr. Green's death.

Before this Court may consider the merits of Ms. Mitchell's claims, the Court first must be satisfied that it has jurisdiction over the claims themselves, and if a non-resident defendant raises the issue, then the Court also must determine whether it may exercise jurisdiction over that defendant.   The Court has jurisdiction over the state-law claims in this action under 28 U.S.C. §1332 because

the citizenship of the plaintiff and the defendants is completely diverse, and there is more than $75,000 in controversy in this Alabama wrongful death action.

Four non-resident defendants challenge the Court's ability to exercise jurisdiction over them. Defendants D&N, LLC; DTD HC, LLC; Norbert Bennett; and Donald Denz ask the Court to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Consistent with the Due Process Clause of the United States Constitution, the Court must do so if these defendants' contacts with the state of Alabama are not sufficient to cause the defendants to have to litigate a claim in this forum. Having reviewed Ms. Mitchell's complaint, the Court finds that she has failed to allege sufficient facts to allow the Court to exercise jurisdiction over these four defendants. Consequently, for the reasons discussed in greater detail below, the Court has granted these defendants' motion to dismiss.

## I.      STANDARD OF REVIEW

As discussed below, the Constitution limits the extent to which a district court may exercise jurisdiction over a non-resident defendant. Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may assert lack of personal jurisdiction as a defense to a claim and may ask a court to dismiss the claim against him on that basis. Fed. R. Civ. P. 12(b)(2).

A plaintiff who sues a non-resident defendant "'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of [personal] jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). A court must accept as true the jurisdictional allegations in the plaintiff's complaint, unless "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position.'" *Id.* (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990) (internal quotation marks omitted)). If that happens, then the burden shifts back to the plaintiff to provide evidence supporting the court's exercise of jurisdiction over the defendant "unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006). When the parties present conflicting evidence, a court "must construe all reasonable inferences in favor of the plaintiff." *Id.*

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2013, Mr. Lavell Green was admitted to the Fairfield Nursing and Rehabilitation Center, LLC (FNRC) as a hospice resident. (Doc. 8-2, ¶¶ 9-10). In her complaint, plaintiff Enid Mitchell alleges that FNRC staff and personnel neglected Mr. Green and failed to provide Mr. Green with an adequate

standard of care, ultimately causing Mr. Green's death on January 25, 2013.  (Doc. 8-2, ¶¶ 11-13).

On December 29, 2014, Ms. Mitchell, as personal representative of Mr. Green's estate, filed an action in Alabama state court against FNRC and numerous other defendants, including Tara Cares/Aurora Cares Enterprise (Tara Cares); DTD HC, LLC; and D&N, LLC.  (Doc. 1-1, ¶¶ 3-4).  On January 26, 2015, Ms. Mitchell amended her complaint to add, among others, defendants Donald Denz and Norbert Bennett to the list of individuals and entities comprising Tara Cares.  (Doc. 8-2, ¶ 3).[1]

In her amended complaint, Ms. Mitchell alleges that FNRC is a domestic corporation.  She adds, upon information and belief, that FNRC:

> is a wholly owned subsidiary of the TARA CARES/AURORA CARES Enterprise which exercised control over [FNRC] and is liable for [FNRC's] misconduct as well as its own independent misconduct.

(Doc. 8-2, ¶ 2).  Ms. Mitchell does not identify in the amended complaint the residence of the "TARA CARES/AURORA CARES Enterprise."

With respect to the "TARA CARES/AURORA CARES Enterprise," Ms. Mitchell explains:

---

[1] Ms. Mitchell asserts the following Alabama state law claims against all defendants: (1) negligence and/or wantonness; (2) negligent and/or wanton supervision/training; (3) negligent and/or wanton retention; (4) negligent and/or wanton hiring; (5) vicarious liability; and (6) medical negligence and/or wantonness.  (Doc. 8-2).

4

["Enterprise"] is Plaintiff's terminology given to the series of companies formed for the ultimate purpose of generating revenue and/or profits for the TARA CARES/AURORA CARES Enterprise (however designated or named) – which includes all the defendants named in this footnote and those named in paragraphs 2-3 of this Complaint – and/or shielding the TARA CARES/AURORA CARES Enterprise.  The existence of multiple entities within the Enterprise, which all have the same ultimate goal – to generate a profit or otherwise benefit the Enterprise – are a mechanism employed by the defendants in an attempt to shield the ultimate head parent company or companies, who receive(s) and/or benefit(s) from the profits generated by Fairfield Nursing and Rehabilitation Center, from liability for their actions.  In fact, defendants' actions are nothing more than a "shell game," where they attempt to subdivide their liability to asset-less companies in an attempt to avoid liability for their actions, while simultaneously reaping profits and/or revenue streams generated by the Enterprise.

(Doc. 8-2, ¶ 2 n.2).   Ms. Mitchell asserts that the "TARA CARES/AURORA CARES Enterprise" consists of D&N, LLC; DTD HC, LLC; Tara Cares Health Services, LLC; Aurora Cares, LLC d/b/a Tara Cares; Aurora Healthcare, LLC d/b/a Tara Healthcare; Tara Therapy, LLC; Norbert Bennett, and Donald Denz. (Doc. 8-2, ¶ 3).   Ms. Mitchell alleges that each member of the enterprise "individually and/or jointly had a responsibility to provide proper care and treatment" to Mr. Green so that "all are liable for [FNRC's] misconduct as well as their own independent misconduct." (*Id.*).   Finally, Ms. Mitchell contends that because of the relationship among the defendants, the defendants are jointly and severally liable "as a joint enterprise (a/k/a the [T]ARA CARES/AURORA CARES Enterprise) . . . for the others['] actions and inactions with regard to the

operation of [FNRC]." (Doc. 8-2, ¶ 4). In her amended complaint, Ms. Mitchell does not identify the residences of the members of the purported the "TARA CARES/AURORA CARES Enterprise."

On January 30, 2015, the defendants removed this action from state court to federal court, citing 28 U.S.C. § 1332 as a basis for federal jurisdiction. (Doc. 1). Initially, defendants FNRC; DTD HC, LLC; D&N, LLC; Aurora Healthcare, LLC; and Aurora Cares, LLC answered the complaint. (Docs. 3, 4, 5, 6, & 7). Shortly before the defendants filed their notice of removal, Ms. Mitchell filed an amended complaint in state court. Defendants DTD HC, LLC; Aurora Healthcare, LLC; D&N, LLC; Aurora Cares, LLC; Chance Becnel; Donald Denz; Norbert Bennett; Tara Therapy, LLC; and FNRC answered the amended complaint. (Docs. 9, 10, 11, 12, 13, 14, 15, 16, & 17). In each of their answers, defendants DTD, D&N, Mr. Denz, and Mr. Bennett asserted that the Court lacks personal jurisdiction over the defendant. (Doc. 4, p. 1; Doc. 5, p. 1; Doc. 9, p. 1; Doc. 11, p. 1; Doc. 14, p. 1; Doc. 15, p. 1).

On March 26, 2015, FNRC filed a motion to compel arbitration. (Doc. 25). Defendants Aurora Cares LLC, Aurora Healthcare LLC, and Tara Therapy LLC joined in the motion to compel arbitration. (Doc. 28). Ms. Mitchell consented to arbitration with those defendants and asked the Court to order the remaining defendants in the case to participate in the arbitration. (Doc. 31, p. 3). The Court

ordered defendants D&N, LLC; DTD HC, LLC; Tara Cares Health Services, LLC; Norbert Bennett, and Donald Denz to advise the Court on or before April 20, 2015, whether they opposed Ms. Mitchell's request for an order directing them to participate in arbitration.  (Doc. 32).

On April 17, 2015, rather than responding to the Court's order, DTD, D&N, Mr. Denz, and Mr. Bennett filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  (Doc. 34).[2]  Mr. Denz and Mr. Bennett each submitted an affidavit in support of the motion to dismiss.  (Docs. 34-3, 34-4).[3]  Ms. Mitchell filed a number of exhibits in opposition to the motion to dismiss.  (Docs. 46-53). On this record, the Court examines the Rule 12(b)(2) motion to dismiss and a number of procedural motions that relate to the motion to dismiss.  (Docs. 43, 54, 56).

## III.   ANALYSIS

### A.   Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution."  *Stubbs*, 447 F.3d at 1360.  The state

---

[2] Tara Cares Health Services, LLC did not join in the Rule 12(b)(2) motion to dismiss, and that defendant has neither answered the amended complaint nor responded to the Court's April 17, 2015 order concerning arbitration (Doc. 32).  Ms. Mitchell voluntarily dismissed her claims against defendant Chance Becnel.  (Docs. 38, 39).

[3] For the reasons explained below, the Court does not discuss these affidavits because the Court has not relied on them in ruling on the defendants' motion to dismiss.

long-arm statute supplies the state law component of the analysis, and the due process clause of the Fourteenth Amendment establishes the constitutional boundaries for personal jurisdiction. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The state and federal law inquiries merge in this case because "Alabama's long-arm statute permits service of process to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurison*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)).

Under the due process clause, "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)) (internal quotations omitted). "The Due Process Clause, by ensuring the 'orderly administration of the laws,' gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (quoting *International Shoe*, 326 U.S. at 319).

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler*, 134 S. Ct. at 754. General jurisdiction "refers to the

power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose" because the defendant is "at home" in the forum. *Daimler*, 134 S. Ct. at 752. The Supreme Court has held that a corporate defendant typically is at home in either its state of incorporation or its principal place of business. *Id.* at 760-62. Under the concept of specific jurisdiction, a court may hear a claim against a nonresident defendant when the defendant, through its conduct, has established minimum contacts with the forum state such that a court's exercise of jurisdiction over the defendant in the forum with respect to that conduct does not violate notions of fair play. *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014). "'[T]he central concern of the [specific jurisdiction] inquiry'" is the "'relationship among the defendant, the forum, and the litigation.'" *Daimler*, 134 S. Ct. at 754 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 197 (1977)); *see also Walden*, 134 S. Ct. at 1121.

In her attempt to persuade this Court that it may exercise jurisdiction over defendants DTD, D&N, Mr. Denz, and Mr. Bennett, Ms. Mitchell primarily relies on an alter ego theory and argues that because the Court has general jurisdiction over FNRC, as a matter of corporate law, the Court also may exercise jurisdiction over the related entities of DTD and D&N and individual defendants Mr. Denz and Mr. Bennett. (Doc. 37, p. 6). Because Ms. Mitchell alleges in her complaint that each defendant other than FNRC is liable not only for FNRC's purported

9

misconduct but also for that defendant's "independent misconduct" (Doc. 8-2, ¶ 3), the Court briefly addresses specific jurisdiction before turning to Ms. Mitchell's alter ego theory of general jurisdiction.

### 1.    Specific Jurisdiction

As stated above, Ms. Mitchell bears the initial burden of alleging in her complaint sufficient facts to make out a prima facie case of personal jurisdiction over the defendants.  To the extent that Ms. Mitchell attempts to pursue claims against DTD, D&N, Mr. Denz, and Mr. Bennett based upon each of the defendant's independent conduct, Ms. Mitchell has failed to carry her burden.  In her amended complaint, she has neither alleged the residency of DTD nor described the nature of DTD's business or the conduct in which the LLC engaged that purportedly led to Mr. Green's death.  (Doc. 8-2, pp. 18-20).  The same is true with respect to Ms. Mitchell's allegations concerning D&N, Mr. Denz, and Mr. Bennett.  Ms. Mitchell's general allegations that the "Defendants" intentionally understaffed FNRC or hired and retained unqualified nurses are too vague to enable the Court to determine from the face of the complaint whether it may exercise jurisdiction over DTD, D&N, Mr. Denz, and/or Mr. Bennett with respect to those defendants' independent conduct, especially in the absence of allegations concerning the residency of those defendants.

In her opposition to the Rule 12(b)(2) motion to dismiss, Ms. Mitchell argues that the arbitration provision in the contract between FNRC and Mr. Green enables this Court to exercise jurisdiction over DTD, D&N, Mr. Denz, and Mr. Bennett.  (Doc. 37, pp. 5-6).  Specifically, Ms. Mitchell asserts that the arbitration provision binds categories of entities and individuals which include the moving defendants, and the provision requires arbitration in Alabama, absent the parties' agreement to another location, such that the moving defendants "purposefully availed themselves of the privileges of operating in Alabama and reasonably anticipated being haled into legal proceedings in Jefferson County, Alabama . . . ." (Doc. 37, p. 5).

As a matter of substantive law, Ms. Mitchell's argument potentially has merit.  In evaluating personal jurisdiction, courts have found that a forum selection clause in an arbitration agreement may give rise to personal jurisdiction over a defendant.  *See*, *e.g.*, *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) ("Personal jurisdiction was not lacking because appellants had consented to personal jurisdiction by the agreement to arbitrate in Minnesota."); *St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc.*, 270 F.3d 621, 624 (8th

Cir. 2001) (implying consent to personal jurisdiction from the forum selection clause in an arbitration agreement).[4]

Factually, Ms. Mitchell's argument potentially has merit too.  Though Ms. Mitchell's jurisdictional allegations as to defendants Aurora Cares LLC, Aurora Healthcare LLC, and Tara Therapy LLC are as deficient as her allegations concerning DTD, D&N, Mr. Denz, and Mr. Bennett, the Aurora/Tara defendants did not file a Rule 12(b)(2) motion to dismiss before they joined in FNRC's motion to compel arbitration.[5]  In their notice of joinder, the Aurora/Tara defendants asserted:

> [t]he broad scope of the [Jury Trial Waiver and Arbitration Agreement] not only covers the claims made by the Plaintiff against FNRC, it also encompasses those same claims made against Tara Cares, Tara Healthcare and Tara Therapy.  Specifically, Mr. Green agreed that the Jury Trial Waiver and Arbitration Agreement binds him and the facility and the facility's "members, affiliated entities, parent companies, subsidiaries, representatives, medical directors,

---

[4]  A court must resolve issues concerning personal jurisdiction before deciding whether an arbitration agreement is enforceable.  A district court may not deflect jurisdictional analysis to an arbitrator.  *See*, *e.g.*, *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, at *2 (E.D. Cal. Oct. 30, 2015) ("For the Court to rule on the motion to compel arbitration, it must first find that it has personal jurisdiction over [the defendant]."); *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453 (5th Cir. 2001) (vacating district court's order compelling defendant to arbitrate because district court lacked personal jurisdiction over defendant); *Johns v. Taramita*, 132 F. Supp. 2d 1021 (S.D. Fla. 2001) (finding that because the Federal Arbitration Act does not authorize nationwide service of process or personal jurisdiction, the court must first determine whether it has personal jurisdiction over a defendant before enforcing an arbitration agreement) (citing *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987)).

[5]  In their answers, the Aurora/Tara defendants stated, "the parties are due to resolve this matter through binding arbitration."  (Doc. 6, ¶ 1; Doc. 7, ¶ 1; Doc. 10, ¶ 2; Doc. 12, ¶ 1; Doc. 16, ¶ 1).

employees, officers, directors, managers, successors, assigns, and agents[.]"

(Doc. 28, p. 3 (quoting Doc. 26-3, p. 2).  The Aurora/Tara defendants continued, "Tara Cares, Tara Healthcare and Tara Therapy fall under the additional entities bound by the Jury Trial Waiver and Arbitration Agreement in that they are affiliated entities."  (Doc. 28, p. 3).  Thus, the Aurora/Tara defendants appear to concede that jurisdiction is proper with respect to them in this forum.[6]

Nevertheless, Ms. Mitchell's argument fails procedurally.  In her amended complaint, Ms. Mitchell does not mention the Jury Trial Waiver and Arbitration Agreement between FNRC and Mr. Green, and she does not allege in her amended complaint that DTD, D&N, Mr. Denz, and Mr. Bennett are "members, affiliated entities, parent companies, subsidiaries, representatives, medical directors, employees, officers, directors, managers, successors, assigns, [or] agents" of FNRC such that they are bound by the Jury Trial Waiver and Arbitration Agreement.  More specifically, Ms. Mitchell does not describe the relationship between the healthcare entities and DTD, D&N, Mr. Denz, and Mr. Bennett. Because Ms. Mitchell did not plead facts regarding the terms of the arbitration

---

[6] The Court deems Aurora Cares LLC, Aurora Healthcare LLC, and Tara Therapy, LLC's joinder in the motion to compel arbitration a waiver of any challenge that those defendants might make to personal jurisdiction in this forum.  *See Palmber v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) ("It is well-settled that lack of personal jurisdiction is a waivable defect, and that a defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a Fed. R. Civ. P. 12 motion.").

agreement or the extent to which defendants DTD, D&N, Mr. Denz, and Mr. Bennett may be bound by the agreement, the Court's analysis ends with the face of the complaint; Ms. Mitchell has not carried her initial burden to plead jurisdictional facts. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) ("Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction.").[7]

Ms. Mitchell also argues in her opposition to the motion to dismiss that Mr. Denz and Mr. Bennett made "trips" to Alabama to visit FNRC, thereby purposefully availing themselves of the privileges of conducting business in Alabama and rendering them subject to personal jurisdiction in Alabama. (Doc. 37, p. 6). Again, Ms. Mitchell's complaint makes no mention of such trips to Alabama. Thus, Ms. Mitchell's failure to plead facts concerning either Mr. Denz's or Mr. Bennett's contacts with the State of Alabama is fatal to her attempt to establish the Court's jurisdiction over Mr. Denz or Mr. Bennett. *See Future Tech. Today*, 218 F.3d at 1249. The Court expresses no opinion as to whether the bare

---

[7] Information about the relationship between the defendants was available to Ms. Mitchell before she filed her original complaint in December 2014. *See Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 2d 396, 409-10 (Ala. 2013) (cited in Doc. 37, Ms. Mitchell's opposition to the Rule 12(b)(2) motion to dismiss). The defendants also provided information about their residency in their notice of removal. (Doc. 1, p. 3). Nevertheless, Ms. Mitchell filed a motion for leave to conduct jurisdictional discovery. (Doc. 54). Because Ms. Mitchell has not satisfied her initial burden of alleging a prima facie case of personal jurisdiction over the moving defendants, the Court does not have to look to additional facts either supporting or refuting personal jurisdiction. Therefore, the Court finds that jurisdictional discovery is not appropriate and has denied Ms. Mitchell's motion for discovery.

allegation that Mr. Dentz and/or Mr. Bennett traveled to Alabama to visit FNRC would be sufficient to establish specific personal jurisdiction over those non-resident defendants in this forum or whether such an initial allegation would provide a basis for jurisdictional discovery.

### 2.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).   As discussed above, in *Daimler*, the United States Supreme Court held that for purposes of general jurisdiction, a corporation typically is "at home" in either its state of incorporation or its principal place of business. *Daimler*, 134 S. Ct. at 760-62.  Several courts have extended the rationale of *Daimler* to LLCs.  For example, in *Finn v. Great Plains Lending, LLC*, 2016 WL 705242 (E.D. Pa. Feb. 23, 2016), the district court explained:

> While Great Plains is an LLC and not a corporation, the reasoning of *Daimler* applies with equal force. Although the language of *Daimler* speaks only in terms of corporations, the subsidiary at issue in *Daimler* was Mercedes-Benz USA, LLC ("MBUSA"). *See Daimler*, 134 S. Ct. at 751. In determining whether the United States District Court for the Northern District of California could exercise general jurisdiction over Daimler-Chrysler Aktiengesellschaft ("Daimler"), the Supreme Court concluded that the district court could not exercise general jurisdiction over Daimler because "neither Daimler nor MBUSA is incorporated in California, nor does either entity have its

> principal place of business there." *Id.* at 761-62. Even though MBUSA is an LLC, the Court looked to MBUSA's place of incorporation and principal place of business to determine whether it was essentially at home in California and thus subject to general jurisdiction in the State.

*Id.* at *3, n. 3; *see also Pittman v. Joe K. Pittman Co., LLC*, 2015 WL 8492531 (E.D. Miss. Dec. 10, 2015); *cf. Allen v. IM Solutions, LLC*, 83 F. Supp. 3d 1196, 1204 (E.D. Okla. 2015) (finding that for purposes of general jurisdiction, an LLC is "at home" in the states in which the LLC's members are incorporated and have their principal places of business and in the state in which the LLC has its principal place of business).

The parties agree that on an individual basis, the Court does not have general jurisdiction over the moving defendants, and the parties seem to agree that the Court may exercise jurisdiction over FNRC under the principle of general jurisdiction because FNRC's principal place of business is in Alabama.  Ms. Mitchell asserts that the Court has general jurisdiction over the moving defendants by virtue of their relationships to FNRC.  Ms. Mitchell argues in her response to the defendants' motion to dismiss that FNRC is the moving defendants' alter ego, and because the Court has general jurisdiction over FNRC, it also has general jurisdiction over the moving defendants.  (Doc. 37, p. 6).

"[T]his alter ego analysis is governed by Alabama corporate veil-piercing law." *Cahaba Disaster Recovery, LLC v. DRC Emergency Servs., LLC*, No. 2:15-

16

CV-02096-LSC, 2015 WL 9489911, at *4 (N.D. Ala. Dec. 30, 2015).   Alabama

law provides:

> "'The doctrine that a corporation is a legal entity existing separate and apart from the persons composing it is a legal theory introduced for purposes of convenience and to subserve the ends of justice. The concept cannot, therefore, be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of this policy, will be disregarded by the courts. Thus, in an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical.'"

*Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 407 (Ala. 2013)

(quoting *Cohen v. Williams,* 318 So. 2d 279, 280-81 (Ala. 1975)).   The Alabama

Supreme Court repeatedly has held that "[w]hether the separate legal entity of a

corporation may be 'pierced' and personal liability imposed is '*a question of fact*

*treated as an evidentiary matter to be determined on a case by case basis.*'"   *Id.* at

408 (quoting *Ex parte AmSouth Bank of Ala.,* 669 So. 2d 154, 156 (Ala. 1995))

(emphasis in *Hill*).   The Alabama Supreme Court has said that "a parent

corporation which owns all the stock of a subsidiary corporation is not liable for

acts of its subsidiary corporation, unless the parent corporation so controls the

operation of the subsidiary corporation as to make it a mere adjunct,

instrumentality, or alter ego of the parent corporation."   *Id.* (quoting *Duff v. S. Ry.*,

496 So. 2d 760, 762 (Ala. 1986)).

The *Duff* Court recognized the following indicia of control:

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation . . . .

(k) The formal legal requirements of the subsidiary are not observed.

*Duff*, 496 So. 2d at 762 (internal citations and quotation marks omitted).

As to the alter ego theory of personal jurisdiction, Ms. Mitchell alleges the following in a footnote in her amended complaint:

["Enterprise"] is Plaintiff's terminology given to the series of companies formed for the ultimate purpose of generating revenue and/or profits for the TARA CARES/AURORA CARES Enterprise (however designated or named) – which includes all the defendants named in this footnote and those named in paragraphs 2-3 of this Complaint – and/or shielding the TARA CARES/AURORA CARES Enterprise. The existence of multiple entities within the Enterprise, which all have the same ultimate goal – to generate a profit or otherwise benefit the Enterprise – are a mechanism employed by the defendants in an attempt to shield the ultimate head parent company or companies, who receive(s) and/or benefit(s) from the profits generated by Fairfield Nursing and Rehabilitation Center, from liability for their actions. In fact, defendants' actions are nothing more than a "shell game," where they attempt to subdivide their liability to asset-less companies in an attempt to avoid liability for their actions, while simultaneously reaping profits and/or revenue streams generated by the Enterprise.

(Doc. 8-2, ¶ 2 n.2). Beyond this general assertion, the amended complaint contains no allegations of fact concerning the relationships among DTD, D&N, Mr. Denz, Mr. Bennett, and FNRC, even though those facts, which Fairfield apparently conceded in *Hill*, are listed in the Alabama Supreme Court's 2013 decision in that case. As with her theory of specific jurisdiction, Ms. Mitchell has not alleged enough facts in her amended complaint to pursue her alter ego theory for imputing FNRC's jurisdictional contacts to the moving defendants.

Even if Ms. Mitchell's allegations were adequate, it is not entirely clear that her alter ego theory translates to an LLC such that this Court may exercise jurisdiction over DTD, D&N, Mr. Denz, and Mr. Bennett. Moreover, although the Eleventh Circuit's decision in *Meier* supports Ms. Mitchell's theory of general

jurisdiction in the context of a parent/subsidiary relationship, *see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) (noting that the imputation of a subsidiary's substantial business activity in a forum to its foreign parent is enough to establish personal jurisdiction over the parent), the Court would have to consider the impact of the *Daimler* decision on the rationale of *Meier*.   In *Daimler*, the Supreme Court stated that even if a subsidiary corporation is regarded as being at home in a particular forum and that subsidiary's contacts with the forum are imputed to the subsidiary's foreign parent corporation, the district court still must perform an independent evaluation of the parent corporation's forum contacts, which might include the contacts imputed from the subsidiary.   134 S. Ct. at 760.   The Court will not decide the issue here.   Because Ms. Mitchell has not met her initial burden of alleging facts sufficient to establish general jurisdiction with respect to the alter ego theory, the Court finds that it does not have general jurisdiction over the moving defendants.   *See Future Technology*, 218 F.3d at 1249.[8]

## B.   Defendants' Motion to Strike Ms. Mitchell's Supplement to Her Response to the Motion to Dismiss

After the moving defendants filed their motion to dismiss, the Court entered an order setting a briefing schedule on the motion.   Under the order, Ms. Mitchell

---

[8] Because Ms. Mitchell has not carried her initial burden of establishing personal jurisdiction, the Court need not consider the moving defendants' affidavit evidence.

had until May 8, 2015 to file her response brief, and the moving defendants had until May 22, 2015 to file their reply brief.  (Doc. 36).  Ms. Mitchell and the moving defendants complied with these deadlines.  On August 18, 2015, over three months after Ms. Mitchell's response brief deadline, Ms. Mitchell filed a supplement to her original response to the defendants' motion to dismiss.  (Doc. 45).   Ms. Mitchell separately filed numerous exhibits in support of her supplemental brief.  (Docs. 46-53).  Ms. Mitchell neither sought leave from the Court nor gave an explanation for the supplement to her original response.

The moving defendants filed a motion to strike Ms. Mitchell's supplement to her response brief.  (Doc. 56).  In her supplemental brief, Ms. Mitchell offers several arguments as to why the moving defendants are subject to general jurisdiction in Alabama; however, none of Ms. Mitchell's supplemental arguments address Ms. Mitchell's pleading deficiencies concerning personal jurisdiction. Because the arguments in Ms. Mitchell's supplemental brief do not affect the Court's analysis with respect to personal jurisdiction, the Court has denied as moot the moving defendants' motion to strike.  (Doc. 57).

## C.    Defendants' Motion for Leave to File Exhibit for In Camera Inspection

The moving defendants filed a motion for leave to file an exhibit for in camera inspection.  (Doc. 43).  The defendants ask the Court to inspect in camera an insurance document that describes FNRC's policy limits.  In support of this

motion, the defendants state that Ms. Mitchell incorrectly cites to an Alabama state court decision in positing FNRC's relevant insurance limits.  Because the Court has not relied on FNRC's insurance policy limits, the Court has denied as moot the defendants' motion for in camera inspection.  (Doc. 57).

## IV.   CONCLUSION

Because the factual allegations of personal jurisdiction in Ms. Mitchell's amended complaint are insufficient, the Court has granted the moving defendants' motion to dismiss for lack of personal jurisdiction.   Ms. Mitchell filed her complaint and her amended complaint in Alabama state court.   The Court recognizes that Alabama's pleading requirements differ from the federal pleading requirements.  *See Smith v. Pilot Travel Centers*, No. 2:14CV713-MHT, 2015 WL 1457470, at *4 (M.D. Ala. Mar. 30, 2015) ("Alabama employs a notice pleading standard, which notably does not incorporate *Iqbal* or *Twombly* pleading standards. Notice pleading must 'provide defendants adequate notice of the claims against them.'  The standard for notice pleading is considered met 'if the claim for relief gives to the opponent fair notice of the pleader's claim and the grounds upon which it rests. The discovery process bears the burden of filling in the factual details.'  While federal pleading standards under *Iqbal* may require 'sufficient factual matter . . . [for] facial plausibility,' an Alabama complaint cannot be dismissed 'if the pleading contains even a generalized statement of facts which will

support a claim for relief.'") (internal citations omitted).  Because of the different

pleading standards, the Court dismisses Ms. Mitchell's claims against the moving

defendants without prejudice.

      **DONE** and **ORDERED** this April 6, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE